T.C. Summary Opinion 2005-92

UNITED STATES TAX COURT

MICHAEL PATRICK AND LYDIA BREWER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5381-04S.              Filed July 19, 2005.

Michael Patrick Brewer and Lydia Brewer, pro sese.

<u>Ric Hulshoff</u>, for respondent.


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of sections 6330(d) and 7463 in effect at the time the petition was filed.[1]  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended.  All Rule references are to the Tax Court Rules of Practice and Procedure.

This collection review case is before the Court on respondent's motion for summary judgment. Respondent issued petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) for unpaid Federal income taxes and related liabilities for 1992, 1994, 1996, and 2000. The notice of determination relates to a notice of Federal tax lien filed on April 10, 2003, for the above years in the approximate amount of $9,027.

The issue for decision is whether, in the context of respondent's motion for summary judgment, respondent's determination to proceed with the filing of a Federal tax lien was an abuse of discretion.

Background

Petitioners resided in Tucson, Arizona, at the time the petition was filed.

Petitioners filed 1992, 1994, 1996, and 2000 Federal income tax returns. The respective amounts of payments and credits relating to the returns in issue were less than the tax liabilities reported. Accordingly, there is a balance due and owing with respect to each of the years in issue. Petitioner, Michael Brewer (hereinafter petitioner) is a U.S. Marine Corps veteran. He suffers from post traumatic stress disorder from his

military service in Vietnam. The Department of Veterans Affairs has concluded that he is 100-percent service disabled.

In November 1999, petitioners submitted an offer in compromise (OIC) to respondent. According to petitioner, the OIC forms were revised by respondent and petitioners submitted a new or revised OIC in May 2000. By letter dated October 5, 2000, the IRS advised petitioners that the OIC was still awaiting assignment to an appropriate IRS representative. The offer was apparently rejected by respondent on January 31, 2002. The record does not contain copies of the OIC or a rejection of the OIC. Respondent's case activity record indicates that the OIC was rejected for failure to submit required financial information.

On April 10, 2003, respondent filed a notice of Federal tax lien with respect to the tax liabilities for the taxable years 1992, 1994, 1996, and 2000; and on April 15, 2003, respondent issued to petitioners a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320. The notice reflects a balance owed of $9,027.02 for said years. Petitioners timely requested a hearing on Form 12153, Request for a Collection Due Process Hearing, with the IRS Office of Appeals. Petitioners explained in the request:

> There are two reasons. One is that I knew I would soon be 100% disabled and never able to pay. Second, Mrs. Holmes in Phoenix told us we went to the "uncollectable status".

\*     \*     \*     \*     \*     \*     \*

We are requesting a hearing for the following reasons.

1) Knowing that I was going to be awarded a 100% disability by the VA, we attempted to effecutuate an OFFER IN COMPROMISE on three (3) separate occasions. The first one was requested in 1999.

We were told by a variety of local CPA's that the IRS was not staffed properly to administrate the OIC Program. We informed the Taxpayer Advocate office in Phoenix of the forth coming Disability Rating and that we would appreciate an answer. It took 3 years to get a response.

One Mrs. Holmes stated to me that we were "placed in UNCOLLECTIBLE STATUS" and that there "would be no liens". So it appears we were misguided.

Ms. Holmes also stated, quite succinctly, that "given the mountain of offers they are processing", "your amount owed is not even worth setting up for payment plans" That is a quote and it was recorded with acknowledgment.

I am now 100% Disabled <u>Permanent</u> and <u>Total</u>, as a result of fighting for the system that we all represent. Since the rating I have developed additional medical problems, total knee replacement, and shingles.

My dear IRS officials, I made a due diligent attempt to pay you, and begged to process my offer sooner. "Time is of the Essence" concept apparently has no play when it comes to the IRS.

I believe I need professional assistance at this Hearing, so I have requested the accounting firm of Moran & Quick CPA's to represent me. The accountants name is Mark DeBenedetti CPA.

By letter dated February 2, 2004, an IRS Appeals officer scheduled a conference with petitioners. The letter also

suggested that petitioners complete Form 433-A, Collection Information Statement for Individuals, with supporting documentation reflecting financial information. The Appeals officer advised that such information was required to consider "currently not collectible" (CNC) status.

On the same date as the scheduled conference, petitioner asked if he could record the conference. The Appeals officer indicated that petitioner could not record if the conference was conducted on that day, since the Appeals officer had received insufficient notice of the request to record. A telephone hearing was conducted by the Appeals officer with petitioner and his representative, Mark DeBenedetti. Petitioners and Mr. DeBonedetti did not submit any additional financial information to the Appeals officer. Petitioner advised the Appeals officer that he had been told by a representative of the Taxpayer Advocate Service that the joint tax liability would be placed in CNC status and that as a result, no notice of Federal tax lien would be filed.

IRS records do not reflect that petitioners' account was ever placed in CNC status. The Appeals officer explained to petitioner and Mr. DeBenedetti that the notice of Federal tax lien would remain in place, even if petitioners were placed in CNC status. The Appeals Officer also advised petitioner that petitioners could submit another OIC.

Respondent issued the aforementioned notice of determination on February 19, 2004.

Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Naftel v. Commissioner, 85 T.C. 527, 529 (1985).

This Court has jurisdiction under section 6330 to review the Commissioner's administrative determinations. Sec. 6330(d). Where, as here, the validity of the underlying tax liability is not at issue, we review the determination for abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 183 (2000).

Under section 6330, a taxpayer is entitled to a hearing in which he or she may raise any relevant issue relating to the unpaid tax or notice of lien filing, including spousal defenses, challenges to the Commissioner's intended collection action, and

alternative means of collection such as an offer in compromise. Sec. 6330(b) and (c)(2).[2]

In this case, petitioners submitted an OIC, which was rejected by respondent. There is no information concerning the contents of the OIC or the rejection thereof. Given this circumstance, we cannot conclude that the rejection of the OIC was an abuse of discretion by respondent. Van Vlaenderen v. Commissioner, T.C. Memo. 2003-346; Crisan v. Commissioner, T.C. Memo. 2003-318.

While petitioners wanted their tax liabilities placed in CNC status and IRS procedures indicate that such status is a collection alternative in response to a levy action, see 2 Administration, Internal Revenue Manual (CCH), sec. 5.16.1.2.1 at 17,804, we note that there is no levy in this case. In addition, it is clear that respondent asked petitioners on more than one

---

[2] Petitioners complain that the Appeals officer improperly prohibited a recording of the Appeals hearing. Sec. 7521(a)(1) provides that "upon advance request" of the taxpayer an IRS officer or employee shall permit the taxpayer to make an audio recording. Keene v. Commissioner, 121 T.C. 8 (2003). Petitioners do not appear to dispute respondent's assertion that petitioners did not comply with the statute and IRS guidelines requiring advance notice of intent to record. See Notice 89-51, 1989-1 C.B. 691. Given that the hearing occurred, and that petitioners do not assert that they raised collection alternatives that were not considered by, or were not reflected in the case activity records of, the Appeals officer, we do not consider the issue of recording to be relevant to our consideration. Petitioners simply have not claimed or shown any prejudice in the failure to permit recording. See Frey v. Commissioner, T.C. Memo. 2004-87; Durrenberger v. Commissioner, T.C. Memo. 2004-44; Brashear v. Commissioner, T.C. Memo. 2003-196; Kemper v. Commissioner, T.C. Memo. 2003-195.

occasion to complete the proper financial forms for consideration of CNC status, and petitioners failed to do so.  We are satisfied that respondent has otherwise satisfied the requirements of sections 6320 and 6330.

On the basis of this record, we conclude as a matter of law that respondent did not abuse his discretion, and we sustain respondent's determination that the filing of a notice of Federal tax lien was appropriate.[3]

Reviewed and adopted as the report of the Small Tax Case Division.

To give effect to the foregoing,

<u>An appropriate order and decision will be entered for respondent</u>.

---

[3]  While we sympathize with petitioners' situation, particularly issues relating to health and disability, we note that this is a lien action, in contrast to a levy action. Respondent advised that he was seeking to protect the IRS position as against other creditors in the filing of a notice of Federal tax lien.  Should respondent seek to levy on petitioners' assets, petitioners will have an opportunity to seek alternatives to such collection action.  As one alternative, petitioners may seek CNC status in response to a levy action.  2 Administration, Internal Revenue Manual (CCH), sec. 5.16.1.2.1, at 17,804.