T.C. Memo. 2005-289

UNITED STATES TAX COURT

HAROLD E. CALL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19609-03L.           Filed December 15, 2005.

     P filed a petition for judicial review pursuant to
secs. 6320 and 6330, I.R.C., in response to a
determination by R to leave in place a filed notice of
Federal tax lien.

     <u>Held</u>:  Because P has advanced groundless
complaints in dispute of the filed notice of tax lien,
R's determination to proceed with collection action is
sustained.

     <u>Held</u>, <u>further</u>, a penalty under sec. 6673, I.R.C.,
is due from P and is awarded to the United States in
the amount of $5,000.


Harold E. Call, pro se.

<u>Alan J. Tomsic</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case arises from a petition for judicial review filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330.[1] The issues for decision are:  (1) Whether respondent may proceed with collection action as so determined, and (2) whether the Court, sua sponte, should impose a penalty under section 6673.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.

Petitioner submitted to the Internal Revenue Service (IRS) Forms 1040EZ, Income Tax Return for Single and Joint Filers With No Dependents, for the 1998 and 1999 taxable years.  On each of these returns, petitioner reported $0 on substantially all pertinent lines, including $0 of income and $0 of tax.  The 1998 return also incorporated petitioner's request for a refund of $1,427, derived from income tax withholdings.  Petitioner attached to each return a statement contending, inter alia, that no law established his liability for income taxes or required him to file a return.

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent issued to petitioner by certified mail a statutory notice of deficiency for 1998 on February 11, 2000, and for 1999 on March 30, 2001. Petitioner did not file a petition with this Court in response to either notice of deficiency, and respondent assessed the taxes, additions to tax, penalty, and/or interest for 1998 on August 14, 2000, and for 1999 on September 24, 2001. A notice of balance due was promptly sent to petitioner with respect to each year.

Thereafter, respondent issued to petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 regarding his unpaid liabilities for 1998 and 1999. On or about April 16, 2003, petitioner submitted to respondent a Form 12153, Request for a Collection Due Process Hearing, setting forth his disagreement with the lien. He challenged, among other things, the validity of the assessments, the issuance of a statutory notice of deficiency or notice and demand for payment, and the authority of Internal Revenue Service personnel. A cover letter with the Form 12153 indicated that petitioner had initially attempted to respond to respondent's proposed collection activities by a letter dated March 26, 2003, and also stated petitioner's intention to record the requested hearing.

The Appeals officer to whom petitioner's case had been assigned subsequently scheduled a hearing for July 2, 2003, in Las Vegas, Nevada. Petitioner appeared for the scheduled hearing

on July 2, 2003, but the hearing did not proceed when the Appeals officer refused to permit petitioner to record the meeting. Following the aborted meeting, in a July 3, 2003, letter to the Appeals officer, petitioner listed issues that he wished to have considered before any determination was issued. The enumerated matters largely reprised the challenges submitted with petitioner's Form 12153, disputing, e.g., underlying liability, proper assessment, receipt of valid notices of deficiency and demand for payment, verification from the Secretary that all applicable legal and procedural requirements had been met, and right to record.

On October 7, 2003, respondent issued to petitioner the aforementioned Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, sustaining the proposed lien action.

Petitioner's petition disputing the notice of determination, having been timely mailed, was filed with the Court on November 12, 2003, and reflected an address in Las Vegas, Nevada. In the petition and in an accompanying document filed as a motion to dismiss for lack of jurisdiction, petitioner relied principally on the claim that he was denied a proper hearing under section 6330 due to the inability to record.[2]

---

[2] Petitioner's motion to dismiss for lack of jurisdiction was denied by order of this Court on Jan. 22, 2004.

On September 10, 2004, respondent filed a motion for summary judgment. Petitioner filed a timely response in opposition to respondent's motion on October 12, 2004. The response again essentially repeated petitioner's demands for a recorded hearing and documentation. The Court on November 10, 2004, issued an order denying the motion for summary judgment, ruling as set forth below:

> As respondent correctly notes in the motion for summary judgment, issues raised by petitioner during the administrative process and before us have been repeatedly rejected by this and other courts or are refuted by the documentary record. Moreover, the Court observes that maintenance of similar frivolous arguments, primarily for delay, has served as grounds for imposition of penalties under section 6673. However, the case in its current posture does present a procedural shortcoming.

> On July 8, 2003, this Court issued Keene v. Commissioner, 121 T.C. 8, 19 (2003), in which it was held that taxpayers are entitled, pursuant to section 7521(a)(1), to audio record section 6330 hearings. The taxpayer in that case had refused to proceed when denied the opportunity to record, and we remanded the case to allow a recorded Appeals hearing. Id. In contrast, we have distinguished, and declined to remand, cases where the taxpayer had participated in an Appeals Office hearing, albeit unrecorded, and where all issues raised by the taxpayer could be properly decided from the existing record. E.g., id. at 19, 20; Frey v. Commissioner, T.C. Memo. 2004-87; Durrenberger v. Commissioner, T.C. Memo. 2004-44; Brashear v. Commissioner, T.C. Memo. 2003-196; Kemper v. Commissioner, T.C. Memo. 2003-195.

> The circumstances of the instant case are analogous to those in Keene v. Commissioner, supra, and diverge from those where it was determined that remand was not necessary and would not be productive. Critically, the notice of determination was issued on October 7, 2003. Although this date is subsequent to

the opinion in <u>Keene v. Commissioner</u>, <u>supra</u>, petitioner was not afforded an opportunity for a recorded conference. Further, because the requested face-to-face hearing was not held, there still exists a possibility that petitioner might have raised one or more nonfrivolous issues if the meeting had proceeded.

In this situation, the Court declines to characterize the failure to allow recording as harmless error. Hence, the Court will deny respondent's motion for summary judgment at this time. As in <u>Keene v. Commissioner</u>, <u>supra</u> at 19, however, we admonish petitioner that if he persists in making primarily frivolous and groundless tax protester arguments in any further proceedings with respect to this case, rather than raising relevant issues, as specified in section 6330(c)(2), the Court may consider granting a future motion for summary judgment. In such an instance, the Court would also be in a position to impose a penalty under section 6673(a)(1).

This case was called from the calendar of the trial session of the Court in Las Vegas, Nevada, on December 6, 2004, and a trial was held that afternoon. At the outset, the Court reminded petitioner that respondent's motion for summary judgment had been denied by our November 10, 2004, order because recording was not permitted, and we explained as follows:

THE COURT: And as of that time the arguments that had been made by you in the record that I was reviewing were deemed by me to be frivolous protester arguments that had not been sustained by the Courts in other cases, and whose precedent I have to follow.

* * * * * * *

THE COURT: But that clearly you were correct in noting that you had the right to record your hearing and that that right had not been afforded you, and therefore you never got your face-to-face hearing, which you are also entitled to.

And so their motion for summary judgment was denied. At this trial today, there is a verbatim record being made, and if you have any other issues that you wish to raise other than those that were in your previous documents, this is your chance to raise them.

If you don't raise what I deem to be a legitimate issue under Section 6330(c)(2), which I have jurisdiction to consider, and I rule against you, then other than your right to appeal to a Circuit Court of Appeals, your case will be over.

So if you have any other additional issues that you wanted to raise or discuss with the Appeals Officer, you need to raise them here today so that I can determine if this case should be remanded to appeals to consider those issues, or if there is not reason to remand the case because there is [sic] no issues that I can't adequately dispose of here at this trial. All right?

The sole new issue specifically raised by petitioner at trial was that the filing of the notice of tax lien was invalid because he did not receive proper notification of this action from respondent. Petitioner testified that he instead learned of the filing from a credit watch service to which he subscribes and which alerts him of adverse activity concerning his credit report.

The parties subsequently filed posttrial briefs. Petitioner recapitulated the position taken throughout these proceedings and at trial, focusing once again on lack of a recorded hearing and of sufficient notification, verification, and documentation of procedural requisites.

OPINION

I.  Collection Actions

A.  General Rules

Section 6321 imposes a lien in favor of the United States upon all property and rights to property of a taxpayer liable for tax where there exists a failure to pay the tax liability after demand for payment.  The lien generally arises at the time assessment is made.  Sec. 6322.  Section 6323, however, provides that such lien shall not be valid against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until the Secretary files a notice of lien with the appropriate public officials.  Section 6320 then sets forth procedures applicable to protect taxpayers in lien situations.  Section 6320(a)(1) establishes the requirement that the Secretary notify in writing the person described in section 6321 of the filing of a notice of lien under section 6323.  This notice required by section 6320 must be sent not more than 5 business days after the notice of tax lien is filed and must advise the taxpayer of the opportunity for administrative review of the matter in the form of a hearing before the IRS Office of Appeals.  Sec. 6320(a)(2) and (3).  Section 6320(b) and (c) grants a taxpayer, who so requests, the right to a fair hearing before an impartial Appeals officer, generally to be conducted in

accordance with the procedures described in section 6330(c), (d), and (e).

Section 6330(c) addresses the matters to be considered at the hearing:

> SEC. 6330(c).  Matters Considered at Hearing.--In the case of any hearing conducted under this section--
>
> (1) Requirement of investigation.--The appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met.
>
> (2) Issues at hearing.--
>
> (A) In general.--The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including--
>
> (i) appropriate spousal defenses;
>
> (ii) challenges to the appropriateness of collection actions; and
>
> (iii) offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.
>
> (B) Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

Once the Appeals officer has issued a determination regarding the disputed collection action, section 6330(d) allows

the taxpayer to seek judicial review in the Tax Court or a U.S. District Court, depending upon the type of tax. In considering whether taxpayers are entitled to any relief from the Commissioner's determination, this Court has established the following standard of review:

> where the validity of the underlying tax liability is properly at issue, the Court will review the matter on a de novo basis. However, where the validity of the underlying tax liability is not properly at issue, the Court will review the Commissioner's administrative determination for abuse of discretion. [Sego v. Commissioner, 114 T.C. 604, 610 (2000).]

B.  Analysis

1.  Appeals Hearing

Hearings conducted under section 6330 are informal proceedings, not formal adjudications. Katz v. Commissioner, 115 T.C. 329, 337 (2000); Davis v. Commissioner, 115 T.C. 35, 41 (2000). There exists no right to subpoena witnesses or documents in connection with section 6330 hearings. Roberts v. Commissioner, 118 T.C. 365, 372 (2002), affd. 329 F.3d 1224 (11th Cir. 2003); Nestor v. Commissioner, 118 T.C. 162, 166-167 (2002); Davis v. Commissioner, supra at 41-42. Taxpayers are entitled to be offered a face-to-face hearing at the Appeals Office nearest their residence. Where the taxpayer declines to participate in a proffered face-to-face hearing, hearings may also be conducted by telephone or correspondence. Katz v. Commissioner, supra at 337-338; Dorra v. Commissioner, T.C. Memo. 2004-16; sec. 301.6330-

1(d)(2), Q&A-D6 and D7, Proced. & Admin. Regs. Furthermore, once a taxpayer has been given a reasonable opportunity for a hearing but has failed to avail himself or herself of that opportunity, we have approved the making of a determination to proceed with collection based on the Appeals officer's review of the case file. See, e.g., <u>Taylor v. Commissioner</u>, T.C. Memo. 2004-25, affd. 130 Fed. Appx. 934 (9th Cir. 2005); <u>Leineweber v. Commissioner</u>, T.C. Memo. 2004-17; <u>Armstrong v. Commissioner</u>, T.C. Memo. 2002-224; <u>Gougler v. Commissioner</u>, T.C. Memo. 2002-185; <u>Mann v. Commissioner</u>, T.C. Memo. 2002-48. Thus, a face-to-face meeting is not invariably required.

Regulations promulgated under section 6330 likewise incorporate many of the foregoing concepts, as follows:

> Q-D6. How are CDP hearings conducted?
>
> A-D6. * * * CDP hearings * * * are informal in nature and do not require the Appeals officer or employee and the taxpayer, or the taxpayer's representative, to hold a face-to-face meeting. A CDP hearing may, but is not required to, consist of a face-to-face meeting, one or more written or oral communications between an Appeals officer or employee and the taxpayer or the taxpayer's representative, or some combination thereof. * * *
>
> Q-D7. If a taxpayer wants a face-to-face CDP hearing, where will it be held?
>
> A-D7. The taxpayer must be offered an opportunity for a hearing at the Appeals office closest to taxpayer's residence or, in the case of a business taxpayer, the taxpayer's principal place of business. If that is not satisfactory to the taxpayer, the taxpayer will be given an opportunity for a hearing by correspondence or by telephone. If that is not

satisfactory to the taxpayer, the Appeals officer or employee will review the taxpayer's request for a CDP hearing, the case file, any other written communications from the taxpayer (including written communications, if any, submitted in connection with the CDP hearing), and any notes of any oral communications with the taxpayer or the taxpayer's representative. Under such circumstances, review of those documents will constitute the CDP hearing for the purposes of section 6330(b). [Sec. 301.6330-1(d)(2), Q&A-D6 and D7, Proced. & Admin. Regs.]

This Court has cited the above regulatory provisions, and corresponding promulgations under section 6320, with approval. See, e.g., Taylor v. Commissioner, supra; Leineweber v. Commissioner, supra; Dorra v. Commissioner, supra; Gougler v. Commissioner, supra.

With respect to the instant matter, the record reflects that petitioner was provided with an opportunity for a face-to-face hearing on July 2, 2003. The hearing did not proceed when petitioner was not permitted to record the meeting. As explained in our previous order in this case, in Keene v. Commissioner, 121 T.C. 8, 19 (2003), this Court held that taxpayers are entitled, pursuant to section 7521(a)(1), to audio record section 6330 hearings. The taxpayer in that case had refused to proceed when denied the opportunity to record, and we remanded the case to allow a recorded Appeals hearing. Id.

In contrast, again as noted in our November 10, 2004, order, we have distinguished, and declined to remand, cases where the taxpayer had participated in an Appeals Office hearing, albeit

unrecorded, and where all issues raised by the taxpayer could be properly decided from the existing record.  E.g., id. at 19-20; Frey v. Commissioner, T.C. Memo. 2004-87; Durrenberger v. Commissioner, T.C. Memo. 2004-44; Brashear v. Commissioner, T.C. Memo. 2003-196; Kemper v. Commissioner, T.C. Memo. 2003-195. Stated otherwise, cases will not be remanded to Appeals, nor determinations otherwise invalidated, merely on account of the lack of a recording when to do so is not necessary and would not be productive.  See, e.g., Frey v. Commissioner, supra; Durrenberger v. Commissioner, supra; Brashear v. Commissioner, supra; Kemper v. Commissioner, supra; see also Lunsford v. Commissioner, 117 T.C. 183, 189 (2001).  A principal scenario falling short of the necessary or productive standard exists where the taxpayers rely on frivolous or groundless arguments consistently rejected by this and other courts.  See, e.g., Frey v. Commissioner, supra; Brashear v. Commissioner, supra; Kemper v. Commissioner, supra.

Because no hearing had been conducted at all in petitioner's case, we declined to grant respondent's motion for summary judgment.  The record as it then existed did not foreclose the possibility that petitioner might have raised valid arguments had a hearing been held.  Accordingly, we provided petitioner an opportunity before the Court at the trial session in Las Vegas to identify any legitimate issues he wished to raise that could

warrant further consideration of the merits of his case by the Appeals Office or this Court.  Petitioner, however, continued to focus on the denial of a recorded hearing and offered no substantive issues of merit.

Hence, despite repeated warnings and opportunities, the only contentions other than the recorded hearing advanced by petitioner are, as will be further discussed below, of a nature previously rejected by this and other courts.  The record therefore does not indicate that any purpose would be served by remand or additional proceedings.  The Court concludes that all pertinent issues relating to the propriety of the collection determination can be decided through review of the materials before it.

### 2.  Review of Underlying Liabilities

Statutory notices of deficiency for 1998 and 1999 were issued to petitioner by certified mail.  Furthermore, statements in the memorandum of law filed in support of petitioner's response to respondent's earlier motion for summary judgment make clear that he received the notices, despite assertions in various other documents that might suggest the contrary.  In addition, the following colloquy on this subject took place at trial:

> THE COURT:  All right.  I have one question, Mr. Call.  The order that I previously entered in your case denying the motion for summary judgment noted that the service had issued statutory notices of deficiencies to you for both the years of '98 and '99.

THE WITNESS:  Yes, sir.

THE COURT:  I believe that you received those statutory notices of deficiency, and that you did not file a petition with the U.S. Tax Court within the 90 day period--

THE WITNESS:  No, sir, I was remiss in not doing that.

THE COURT:  --if you disagreed with the numbers on those notices that probably or that would have been in your best interest to file that.

THE WITNESS:  That is not what I disagreed with. It is some of the subsequent notices that I have gotten and the figures don't seem to add up.

Given these remarks, the Court is satisfied that petitioner received the statutory notices and did not timely petition this Court for redetermination when he had the opportunity to do so. Accordingly, petitioner is precluded under section 6330(c)(2)(B) from disputing his underlying 1998 and 1999 liabilities in this proceeding.  Other comments and contentions in the record generally challenging the "existence" of any statute imposing or requiring him to pay income tax warrant no further comment.  See Crain v. Commissioner, 737 F.2d 1417, 1417 (5th Cir. 1984) ("We perceive no need to refute these arguments with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit.").

3.  Review for Abuse of Discretion

Petitioner has also made various arguments relating to aspects of the assessment and collection procedures that we

review for abuse of discretion.  Action constitutes an abuse of discretion under this standard where arbitrary, capricious, or without sound basis in fact or law.  Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Federal tax assessments are formally recorded on a record of assessment in accordance with section 6203.  The Commissioner is not required to use Form 23C in making an assessment.  Roberts v. Commissioner, 118 T.C. at 369-371.  Furthermore, section 6330(c)(1) mandates neither that the Appeals officer rely on a particular document in satisfying the verification requirement nor that the Appeals officer actually give the taxpayer a copy of the verification upon which he or she relied.  Craig v. Commissioner, 119 T.C. 252, 262 (2002); Nestor v. Commissioner, 118 T.C. at 166.

A Form 4340, Certificate of Assessments, Payments and Other Specified Matters, for instance, constitutes presumptive evidence that a tax has been validly assessed pursuant to section 6203.  Davis v. Commissioner, 115 T.C. at 40 (and cases cited threat).  Consequently, absent a showing by the taxpayer of some irregularity in the assessment procedure that would raise a question about the validity of the assessments, a Form 4340 reflecting that tax liabilities were assessed and remain unpaid is sufficient to support collection action under section 6330.  Id. at 40-41.  We have specifically held that it is not an abuse

of discretion for an Appeals officer to rely on Form 4340, <u>Nestor v. Commissioner</u>, <u>supra</u> at 166; <u>Davis v. Commissioner</u>, <u>supra</u> at 41, or a computer transcript of account, <u>Schroeder v. Commissioner</u>, T.C. Memo. 2002-190; <u>Mann v. Commissioner</u>, T.C. Memo. 2002-48, to comply with section 6330(c)(1).

Here, the record contains Forms 4340 for 1998 and 1999, indicating that assessments were made for each of these years and that taxes remain unpaid. Although the Form 4340 for 1999 contains one labeling error explained by respondent in the notice of determination, the error does not affect the existence of valid, unsatisfied assessments.[3] Petitioner has cited no further irregularities that would cast doubt on the pertinent liability information recorded the Forms 4340.

In addition to the specific dictates of section 6330, the Secretary, upon request, is directed to furnish to the taxpayer a copy of pertinent parts of the record of assessment setting forth the taxpayer's name, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed. Sec. 6203; sec. 301.6203-1, Proced. & Admin.

---

[3] The assessment of income tax for 1999 was inadvertently labeled as an "agreed audit deficiency prior to 30 or 60 day letter", as opposed to an "audit deficiency per default to 90 day letter". Nonetheless, other entries on the form clarify the factual circumstances, and in any event the issue was adequately considered and addressed by the Appeals officer in determining whether the collection action should be sustained (an observation unaffected by a typographical error in the notice of determination referring to the 1999 year as 1990).

Regs. A taxpayer receiving a copy of Form 4340 has been provided with all the documentation to which he or she is entitled under section 6203 and section 301.6203-1, Proced. & Admin. Regs. Roberts v. Commissioner, supra at 370 n.7. This Court likewise has upheld collection actions where taxpayers were provided with literal transcripts of account (so-called MFTRAX). See, e.g., Frank v. Commissioner, T.C. Memo. 2003-88; Swann v. Commissioner, T.C. Memo. 2003-70. The notice of determination states "certified transcripts (Form 4340)" were mailed to petitioner. Petitioner challenges that statement on brief with the assertion: "The so-called transcripts were not properly certified and were not signed by an Assessment Officer as required by law." The Court concludes that petitioner's complaints regarding the assessments and verification are meritless.

Petitioner has denied receiving the notice and demand for payment that section 6303(a) establishes should be given within 60 days of the making of an assessment. However, a notice of balance due constitutes a notice and demand for payment within the meaning of section 6303(a). Craig v. Commissioner, supra at 262-263. The Forms 4340 indicate that petitioner was sent notices of balance due for each of the tax years involved.

Finally, at trial petitioner raised an issue regarding proper notification of the filing of the notice of tax lien. His

testimony on this matter on cross-examination included the following:

> Q    Mr. Call, you say that you never received a copy of the notice of the Federal Tax lien filed?[4]
>
> A    No, sir.  I got one when I found the notice from Credit Watch in my e-mail actually.  I went to the County Recorder and got a copy of the notice of tax lien that was filed, or actually there was two of them.
>
> There was one for each year, but I got my copies of the notices of a tax lien from the County Recorder's order.
>
> Q    And you still managed to get that in time to file a request for a CDP hearing?
>
> A    Yes, sir, apparently I did.
>
> Q    Do you have a date of notice from this Credit Watch Service or any sort of a document that indicates when you received it originally?
>
> A    I have the notices that I picked up from the County Recorder, and I think they have a stamp on them. I am not absolutely certain, but I think they stamped it or date stamped it.

He later added:

> I am assuming that the Credit Watch notified me, I guess, within a day or two of the time that the notice of tax lien was filed at the County Recorder.
>
> And I was probably at the Recorder's office the next day possibly, and possibly the same day.  I don't remember.  But I didn't dillydally.  I went up there and got that, knowing that my time was limited to file.

---

[4] The Court notes that sec. 6320(a)(1) by its terms requires only that a taxpayer be given notification that a tax lien has been filed, not that a copy of the notice of tax lien so filed be furnished to the taxpayer.

On reply brief, petitioner expresses his position on this issue as follows:

> Two Notices of Federal Tax Lien were filed with the Clark County Recorder in March of 2003, for tax years 1998 and 1999. Petitioner was not notified of these filings within five days as required by law, and Internal Revenue Regulations. Respondent claimed during the inquisition in Tax Court that notification was sent to Petitioner. According to normal procedures such notices are sent Certified Mail and the signed delivery receipt is retained by the sender. To date, no such evidence of delivery has been produced by Respondent. Petitioner was made aware of the filing of the notices by an on-line credit watch agency and filed a request for Collection Due Process Hearing on April 16, 2003. Petitioner did not obtain copies of the Notices of Federal Tax Lien until October 30, 2004 when Petitioner went to the Clark County Recorder's office in person and requested them. * * *

Petitioner attached to his reply brief copies of the notices of tax lien, prepared and signed by the IRS on March 5, 2003, and a copy of his order receipt for copies of these notices from the Clark County Recorder, dated October 30, 2003.

The Forms 4340 show March 7, 2003, as the date of the Federal tax liens. The notice of determination similarly references March 7, 2003, as the "Date of CDP Notice" and March 26, 2003, as the "Date Form 12153 Received". As previously noted, petitioner's Form 12153 was submitted on April 16, 2003, with a cover letter indicating that he had sent an earlier March 26, 2003, letter pertaining to respondent's collection activities, to which he had received no response.

Hence, the combination of petitioner's testimony and the various documentary submissions leaves several facts unexplained. For instance, if petitioner did not receive the notice of lien filing and attached copy of Form 12153 sent by the IRS, when and how did he learn about and obtain the Form 12153. The record likewise remains vague on the timing and content of the alleged e-mail notification from the credit watch service. It is also unusual from a timing perspective that petitioner's request to the county recorder's office for copies of the lien notices occurred after the administrative proceedings in this case were concluded, after the notice of determination issued, and less than a week before he mailed his petition to this Court. Suffice it to say that the claims of nonreceipt of proper notice from the IRS are less than thoroughly convincing.

Regardless of the veracity of these claims, however, it is clear that petitioner was aware of the lien filing within a period to communicate in a timely manner so as to preserve his rights to an Appeals hearing and subsequent judicial review. In similar circumstances, this Court has ruled: "Because the hearing had been timely requested within the prescribed 30-day period, petitioner's claims that respondent did not send Letter 3172 to petitioner's last known address and that petitioner never received it are beside the point." Stein v. Commissioner, T.C. Memo. 2004-124. In that case, the Court concluded that any error

was harmless and did not give rise to an abuse of discretion in sustaining the lien, and we see no reason to depart from such an analysis in the instant scenario.

Thus, with respect to those issues enumerated in section 6330(c)(2)(A) and subject to review in collection proceedings for abuse of discretion, petitioner has not raised any spousal defenses, valid challenges to the appropriateness of the collection action, or collection alternatives.  As this Court has noted in earlier cases, Rule 331(b)(4) states that a petition for review of a collection action shall contain clear and concise assignments of each and every error alleged to have been committed in the notice of determination and that any issue not raised in the assignments of error shall be deemed conceded.  See Lunsford v. Commissioner, 117 T.C. at 185-186; Goza v. Commissioner, 114 T.C. 176, 183 (2000).  For completeness, we have addressed various points advanced by petitioner during the administrative process and this litigation, but the items listed in section 6330(c)(2)(A) were not pursued in any proceedings. Accordingly, the Court concludes that respondent's determination to proceed with collection of petitioner's tax liabilities was not an abuse of discretion.

## II.  Section 6673 Penalty

Section 6673(a)(1) authorizes the Court to require the taxpayer to pay a penalty not in excess of $25,000 when it

appears to the Court that, inter alia, proceedings have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceeding is frivolous or groundless. In <u>Pierson v. Commissioner</u>, 115 T.C. 576, 581 (2000), we warned that taxpayers abusing the protections afforded by sections 6320 and 6330 through the bringing of dilatory or frivolous lien or levy actions will face sanctions under section 6673. We have since repeatedly disposed of cases premised on arguments akin to those raised herein summarily and with imposition of the section 6673 penalty. See, e.g., <u>Craig v. Commissioner</u>, 119 T.C. at 264-265 (and cases cited thereat).

With respect to the instant matter, we are convinced that petitioner instituted this proceeding primarily for delay. Throughout the administrative and trial process, petitioner advanced contentions and demands previously and consistently rejected by this and other courts. He submitted communications quoting, citing, using out of context, and otherwise misapplying portions of the Internal Revenue Code, regulations, Supreme Court decisions, and other authorities. While his procedural stance concerning recording was correct, he ignored the Court's explicit warning that any further proceedings would be justified only in the face of relevant and nonfrivolous issues.

Moreover, petitioner was expressly alerted to the potential use of sanctions in his case. Yet he appeared at the trial

session in Las Vegas without any legitimate evidence or argument in support of his position. He instead continued to espouse positions that had been explicitly addressed and rejected in this Court's order of November 10, 2004, or in other cases previously decided by the Court. The Court sua sponte concludes that a penalty of $5,000 should be awarded to the United States in this case. To reflect the foregoing,

An appropriate decision will be entered.